1 | JAMES McMANIS (40958)
2 | MARWA ELZANKALY (206658)
| McMANIS FAULKNER & MORGAN
3 | A Professional Corporation
| 50 W. San Fernando Street, 10th Floor
4 | San José, California 95113
| Telephone: (408) 279-8700
5 | Facsimile: (408) 279-3244
6 | melzankaly@mfmlaw.com

7 | Attorneys for Plaintiff, CARMEN GONZALEZ

8 | UNITED STATES DISTRICT COURT
9 | NORTHERN DISTRICT OF CALIFORNIA
| SAN JOSE DIVISION

10 | CARMEN GONZALEZ, on behalf
11 | of herself and others similarly situated,

12 | Plaintiffs,

13 | vs.

14 | CHUNGHWA PICTURE TUBES, LTD.;
15 | TATUNG COMPANY OF AMERICA, INC.;
| L.G. ELECTRONICS, INC.; MATSUSHITA
16 | ELECTRIC INDUSTRIAL CO. LTD.;
| PANASONIC CORPORATION OF NORTH
17 | AMERICA; KONINKLIJKE PHILIPS
| ELECTRONICS NV; PHILIPS ELECTRONICS
18 | NORTH AMERICA CORPORATION; LG
19 | PHILIPS DISPLAY USA, INC.;
| SAMSUNG ELECTRONICS CO. LTD.;
20 | SAMSUNG ELECTRONICS AMERICA, INC.;
| SAMSUNG SDI CO. LTD., formerly known as
21 | SAMSUNG DISPLAY DEVICE CO.; TOSHIBA
| CORPORATION; TOSHIBA AMERICA
22 | ELECTRONICS COMPONENTS, INC.;
23 | TOSHIBA AMERICA INFORMATION
| SYSTEMS, INC.; MT PICTURE DISPLAY
24 | COMPANY; MT PICTURE DISPLAY
| CORPORATION OF AMERICA (New York);
25 | MT PICTURE DISPLAY CORPORATION OF
26 | AMERICA (Ohio), LP DISPLAYS, and DOES 1
| through 50, inclusive,

27

28 | Defendants.

Case No. **C08 01108 JF HRL**

**CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED**

1

CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED

1    Plaintiff, by her undersigned attorneys, individually and on behalf of the class described

2    below, brings this action for damages and injunctive relief for price fixing and market and

3    customer allocation under Section 1 of the Sherman Act of 1890, 15 U.S.C. § I, and the antitrust

4    laws of the United States, the California Cartwright Act and the California Unfair Competition

5    laws, against the manufacturers of cathode-ray tubes ("CRTs") and products containing CRTs,

6    named above, which participated in an overarching, on-going, international conspiracy and cartel

7    beginning on at least January 1, 1995 and continuing to the present.  Based on personal

8    knowledge, information and belief, and the investigation of counsel, plaintiff, Carmen Gonzalez,

9    alleges as follows;

10                                **NATURE OF THE CASE**

11        1.        This case arises out of a long-running, international conspiracy among defendants

12    and their co-conspirators to fix the prices of, CRTs and products containing CRTs (jointly, "CRT

13    Products").

14        2.        This lawsuit is brought as a class action on behalf of all individuals and entities

15    who purchased CRT Products indirectly from Defendants, their predecessors or their controlled

16    subsidiaries and affiliates from at least as early as January 1, 1995 to the present (the "Class

17    Period").  Plaintiff alleges that during the Class Period, Defendants conspired to fix, raise,

18    maintain, or stabilize the prices of CRT Products sold in the United States during the relevant

19    time period defined below.

20        3.        Throughout the Class Period, Defendants' conspiracy was intended to, and did,

21    moderate the downward price pressures on CRT Products caused by the market entry and rapid

22    penetration of more technologically advanced competitive products.  As explained in further

23    detail below, liquid crystal displays ("LCD") and plasma display panels ("PDP") were used in

24    the same primary applications as CRTs and presented significant advantages over CRT Products.

25    LCD, PDP and products containing LCD or PDP will collectively be referred to as flat panel

26    display products ("FPD Products").  Many of the Defendants, in addition to manufacturing,

27    distributing and selling CRT Products, were also manufacturers, distributors, and sellers of FPD

28    Products.  Defendants who participated in both the market for CRT Products and the market for

CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED

1    FPD Products will be specifically identified below.

2        4.    Because of Defendants' unlawful conduct, Plaintiff and other Class members paid

3    artificially inflated prices for CRT Products, and as a result, have suffered antitrust injury to their

4    business or property.

5                    **JURISDICTION AND VENUE**

6        5.    Plaintiff brings this Class Action pursuant to the California Cartwright Act,

7    codified under California Business and Professions Code, §§ 16720, et seq., and the California

8    Unfair Competition laws, codified under California Business and Professions Code, §§ 17200, et

9    seq.

10        6.    This Complaint is also filed under Section 1 of the Sherman Antitrust Act, 15

11    U.S.C. § 1, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 & 26 to enjoin

12    Defendants, and their officers, agents, employees, or representatives from engaging in the

13    unlawful contract, combination, and conspiracy in restraint of trade or commerce of CRT or

14    products containing CRT, and to recover treble damages and costs of suit, including reasonable

15    attorney's fees, for the injuries suffered by Plaintiff and the Class members in their business and

16    property.

17        7.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. The

18    matter in controversy exceeds $5,000,000 exclusive of interest and costs when the claims of

19    individual class members are aggregated, and is between citizens of different states. Venue is

20    proper in the United States District Court for the Northern District of California pursuant to 15

21    U.S.C. § 15 and § 22 and 28 U.S.C. § 1391, as the Defendants reside, transact business or are

22    found within this District, and/or a substantial part of the events giving rise to the Class

23    Members' claims arose in this District.

24        8.    This Court also has subject matter jurisdiction over the Plaintiff's Clayton Act and

25    Sherman Antitrust Act claims, 15 U.S.C. §§ 1 & 26, under 28 U.S.C. §§ 1331 & 1337. This

26    Court also has subject matter jurisdiction over Plaintiff's state law claims under 28 U.S.C. §

27    1367 because those claims arise from the same case or controversy as Plaintiff's federal claims.

28

CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED

9.      This Court has in *personam* jurisdiction over each of the Defendants because, *inter alia,* each Defendant: (a) transacted business in the United States; (b) directly or indirectly sold and provided CRT Products throughout the United States; (c) had substantial aggregate contacts with the United States as a whole; and/or (d) was engaged in an illegal price-fixing conspiracy that was directed at, and had the intended effect of causing injury to, persons and entities residing in, located in, or doing business throughout the United States, including in this district. Alternatively, there is jurisdiction over foreign Defendants pursuant to Federal Rule of Civil Procedure 4(k)(2).

10.     Plaintiff, Carmen Gonzalez, is an individual residing in the County of Santa Clara. Plaintiff has indirectly purchased CRT Products from one or more of the Defendants during the Class Period and was injured as a result of Defendants' illegal conduct. The price that Plaintiff paid to Defendants or their co-conspirators was greater than it would have been absent the conspiracy herein alleged. As a result of the alleged conspiracy, Plaintiff was injured by reason of the antitrust violations alleged herein. Plaintiff asserts a claim on behalf of herself and all indirect purchasers of CRT Products from one or more of the Defendants during the Class Period.

## DEFENDANTS

### Chunghwa

11.     Defendant Chunghwa Picture Tubes, Ltd. ("Chunghwa") is a Taiwanese company with its principal place of business at 1127 Heping Road, Bade City, Taoyuan, Taiwan. It is a partially owned subsidiary of Tatung Company, a consolidated consumer electronics and information technology company based in Taiwan. Chunghwa's Board of Directors includes representatives from Tatung Company. The Chairman of Chunghwa, Weishan Lin, is also the Chairman and General Manager of Tatung Company. During the Class Period, Chunghwa manufactured, sold, and distributed CRT Products to customers throughout the United States. Chunghwa also manufactured, distributed and sold FPD Products in the United States during the Class Period.

1        12.    Defendant Tatung Company of America, Inc. is a California corporation with its

2    principal place of business at 2850 El Presidio Street, Long Beach, California. Tatung Company

3    of America, Inc. is a wholly-owned and controlled subsidiary of Tatung Company. During the

4    Class Period, Tatung Company of America, Inc. manufactured, sold, and distributed CRT

5    Products to customers throughout the United States. Tatung Company of America, Inc. also

6    manufactured, distributed and sold FPD Products in the United States during the Class Period.

7    **LG**

8        13.    Defendant LG Electronics, Inc. ("LGE"), is a manufacturer of CRT Products with

9    its global headquarters located at LG Twin Towers 20, Yeouido-dong, Yeongdeungpo-gu, Seoul,

10    Korea 150-721. During the Class Period, LGE manufactured, sold and distributed CRT Products

11    to customers throughout the United States. LGE also manufactured, distributed and sold FPD

12    Products in the United States during the Class Period.

13    **Matsushita**

14        14.    Defendant Matsushita Electric Industrial Co., Ltd ("Matsushita") is a Japanese

15    company and has its global headquarters at 1006 Kadoma, Osaka 571-8501, Japan. Matsushita

16    is the parent company of Panasonic Corporation of North America, NC Company of America,

17    and Victor Company of Japan, Ltd. During the Class Period, Matsushita manufactured, sold and

18    distributed CRT Products to customers throughout the United States. Matsushita also

19    manufactured, distributed and sold FPD Products in the United States during the Class Period.

20        15.    Defendant Panasonic Corporation of North America ("Panasonic"), is a subsidiary

21    of Defendant Matsushita and oversees its North American business operations, including sales.

22    Defendant Panasonic has its global headquarters at I Panasonic Way, Secaucus, New Jersey,

23    07094. During the Class Period, Panasonic manufactured, sold and distributed CRT products to

24    customers throughout the United States. A substantial portion of the CRTs produced by MT

25    Picture Displays Co., Matsushita's subsidiary, went to Panasonic for Panasonic's production of

26    CRT Products. Panasonic also manufactured, distributed and sold FPD Products in the United

27    States during the Class Period.

28

CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED

1

**Philips**

2      16.      Defendant Koninklijke Philips Electronics NV ("Koninklijke") has its global

3   headquarters at Breitner Center Amstelplein 2, Amsterdam 1096 BC, Netherlands. During the

4   Class Period, Koninklijke manufactured, sold and distributed CRT Products to customers

5   throughout the United States. Koninklijke also manufactured, distributed and sold FPD Products

6   in the United States during the Class Period.

7      17.      Defendant Philips Electronics North America Corporation ("Philips Electronics

8   NA"), is a manufacturer of CRT Products. Defendant Philips Electronics NA has its global

9   headquarters at 1251 Avenue of the Americas, New York, New York 10020.  During the Class

10  Period, Philips Electronics NA manufactured, sold and distributed CRT Products to customers

11  throughout the United States. Philips Electronics NA also manufactured, distributed and sold

12  FPD Products in the United States during the Class Period.

13     18.      Defendant LG Philips Display USA, Inc. ("LGPD"), is a manufacturer of CRT

14  Products and is a subsidiary of Philips Electronics NA. Defendant LG Philips Display USA, Inc.

15  has its global headquarters at 300W Morgan Rd, Ann Arbor, MI 48 108-9108, United States.

16  During the Class Period, LGPD manufactured, sold and distributed CRT Products to customers

17  throughout the United States.

18     **Samsung**

19     19.      Defendant Samsung Electronics Co., Ltd. ("Samsung Electronics") is a Korean

20  company with its principal place of business at Samsung Main Building, 250, Taepyeongno 2-ga,

21  Jung-gu, Seoul 100-742, Korea. It is the world's largest producer of CRT Products. During the

22  Class Period, Samsung Electronics manufactured, sold, and distributed CRT Products to

23  customers throughout the United States. Samsung Electronics also manufactured, distributed and

24  sold FPD Products in the United States during the Class Period.

25     20.      Defendant Samsung SDI Co., Ltd. ("Samsung SDI"), formerly known as Samsung

26  Display Device Co., has its global headquarters at Samsung Life Insurance Bldg 150, Seoul 100-

27  716, Korea. During the Class Period, Samsung SDI manufactured, sold and distributed CRT

28  Products to customers throughout the United States.  Samsung SDI also manufactured,

CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED

1    distributed and sold FPD Products in the United States during the Class Period.

2    21.    Defendant Samsung Electronics America, Inc. ("Samsung America") is a New

3    York corporation with its principal place of business at 105 Challenger Road, Ridgefield Park,

4    New Jersey. Samsung America is a wholly-owned and controlled subsidiary of Defendant

5    Samsung Electronics Company, Ltd.  During the Class Period, Samsung America sold and

6    distributed CRT Products manufactured by Samsung Electronics Company, Ltd. to customers

7    throughout the United States.  Samsung America also sold and distributed FPD Products in the

8    United States during the Class Period.

9    22.    Defendants Samsung Electronics Company, Ltd., Samsung SD! Co., Ltd., and

10   Samsung America are referred to collectively herein as "Samsung."

11   **Toshiba**

12   23.    Defendant Toshiba Corporation is a Japanese company with its principal place of

13   business at I-I, Shibaura I -chome, Minato-ku, Tokyo 105-8001, Japan.  During the Class Period,

14   Toshiba Corporation manufactured, sold, and distributed CRT Products to customers throughout

15   the United States. Toshiba Corporation also manufactured, distributed and sold FPD Products in

16   the United States during the Class Period.

17   24.    Defendant Toshiba America Electronics Components, Inc. is a California

18   corporation with its principal place of business at 19900 MacArthur Boulevard, Suite 400, Irvine,

19   California.  Toshiba America Electronics Components, Inc. is a wholly-owned and controlled

20   subsidiary of Toshiba America, Inc., a holding company for Defendant Toshiba Corporation.

21   During the Class Period, Toshiba America Electronics Components, Inc. sold and distributed

22   CRT Products manufactured by Toshiba Corporation to customers throughout the United States.

23   Toshiba America Electronic Components also sold and distributed FPD Products manufactured

24   by Toshiba Corporation in the United States during the Class Period.

25   25.    Defendant Toshiba America Information Systems, Inc. is a California corporation

26   with its principal place of business at 9470 Irvine Blvd., Irvine, California.  Toshiba America

27   Information Systems, Inc. is a wholly-owned and controlled subsidiary of Toshiba America, Inc.,

28   a holding company for Defendant Toshiba Corporation.  During the class Period, Toshiba

7

America Information Systems, Inc. sold and distributed CRT Products manufactured by Toshiba Corporation to customers throughout the United States. Toshiba America Information Systems also sold and distributed FPD Products manufactured by Toshiba Corporation in the United States during the Class Period.

26. Defendants Toshiba Corporation, Toshiba America Electronics Components, Inc., and Toshiba America Information Systems, Inc. are referred to collectively herein as "Toshiba."

**Joint Ventures**

27. Defendant MT Picture Display Company is a wholly-owned and controlled subsidiary of Defendant Matsushita organized under the laws of Japan with its principal place of business located at Rivage Shinagawa, I -S. Konan 4-chome, Minato-ku, Tokyo 108-0075, Japan. Prior to April 2007, MT Picture Display Company was a joint venture between Matsushita Electric Industrial Co., Ltd. and Toshiba Corporation named Matsushita Toshiba Picture Display Co. Ltd. This joint venture was created in 2003 and integrated the CRTs operations of its parents. During the Class Period, both MT Picture Display and its predecessor Matsushita Toshiba Picture Display Co. Ltd. sold and distributed CRT Products to customers throughout the United States.

28. Defendants MT Picture Display Corporation of America (New York) and MT Picture Display Corporation of America (Ohio) were subsidiaries of MT Picture Display Company. Both subsidiaries were incorporated in Maryland, with their principal place of business located at 300 East Lombard Street, Baltimore, MD 21202. During the Class Period, MT Picture Display Corporation of America (New York) and MT Picture Display Corporation of America (Ohio) sold and distributed CRT Products to customers throughout the United States.

29. Defendant LP Displays (formerly known as LG Philips Display), a joint venture between LG Electronics and Koninklijke Philips Electronics, is organized under the laws of Hong Kong with its principal place of business located at Corporate Communications, 6th Floor, ING Tower, 308 Des Voeux Road Central, Sheung Wan, Hong Kong. During the Class Period, LP Displays sold and distributed CRT Products to customers throughout the United States.

CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED

30.    Each defendant committed the acts alleged in this complaint through its officers, directors, agents, employees, or representatives while they were actively engaged in the management, direction, control, or transaction of the Defendant's business or affairs.

31.    Defendants' unlawful and intentional concerted actions have severely damaged and will continue to damage Plaintiff and the members of the Class it seeks to represent.

**CO-CONSPIRATORS**

32.    As additional information may come to light, Plaintiff reserves the right to add other Defendants as they become known to her.

33.    Various other individuals, partnerships, corporations, organizations, firms, and associations not yet made Defendants in this Complaint (the "Co-Conspirators") and presently unknown to Plaintiff, participated as co-conspirators in the violation alleged herein, and performed acts and made statements in furtherance of the conspiracy.

34.    The true names and capacities, whether individual, corporate, associate, representative, or otherwise of Defendants named herein as DOES 1 through 50 are unknown to Plaintiff at this time, and are therefore sued by such fictitious names. Plaintiff will amend this complaint to allege the true names and capacities of DOES 1 through 50 when they become known to Plaintiff. Each of DOES 1 through 50 is in some manner legally responsible for the violations of law alleged herein.

35.    The acts charged in this Complaint as having been done by Defendants and the DOE Defendants were authorized, ordered, or done by their officers, agents, employees, or representatives, while actively engaged in the management of the Defendants' businesses or affairs.

**FACTUAL ALLEGATIONS**

**CRT Technology**

36.    CRT technology has been in use for more than 100 years. The basic cathode-raytube consists of three elements: the envelope, the electron gun, and the phosphor screen.

37.    CRTs are manufactured in several standard sizes, including 17 inch, 19 inch, 27 inch and 32 inch. CRTs manufactured by Defendants are interchangeable with one another.

**Trends within the CRT Products Market and Increased Competition from FPD Products**

38.    The worldwide market for CRT Products is and has been large.  In 1997, the worldwide CRTs market exceeded $24 billion in sales.

39.    At the beginning of the Class Period, CRTs were the dominant display technology worldwide.  For example, in 1997, 99.3% of all computer monitors sold worldwide contained CRTs.  In 2005, approximately 47 million CRT monitors were sold worldwide, and approximately 20.3% of these were sold in the United States.

40.    Although the value of all display materials shipped worldwide is projected to rise at an average annual growth rate of 12.8% by 2010, worldwide demand for CRT Products is declining overall because of the growing popularity of FPD Products which are being used in place of CRT Products. (http://www.bccresearcyh.com/RepTemplate.cfm?reportID=442&RepDet=HLT&cat=smc&target=repdet...11/13/2007)  CRT Products' share of the market declined precipitously in the United States where FPD Products achieved more rapid market penetration.

41.    FPD Products may be used to produce the same image as CRT Products but also have many important advantages over CRT Products.  For example, FPD Products are less bulky, require less energy, are easier to read, and do not flicker.

42.    In 1995, recognizing the increasing significance of FPD technologies, Korean manufacturers Samsung and LG Electronics entered the FPD Product market, leading to a surge in FPD Product manufacturing capacity.

43.    The market share of CRT Products declined as other newer technologies emerged and were brought to market.  By 1998, FPD Products had already achieved 32% of the U.S. market for CRT Products.  Penetration by FPD Products is projected to reach 96% by 2009. FPD Products' global penetration has not been as dramatic as it was in the United States due to the continued popularity of lower-priced CRT Products in China, India and South America.

44.    CRT TVs currently account for only a minority share of television set revenues in North America (37.3%), Japan (9.5%) and Europe (31.0%).

10

CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED

45.    During the Class Period, while demand for CRT Products continued to fall in the United States, Defendants' conspiracy was effective in moderating the normal downward pressures on prices for CRT Products caused by the entry of the new generation of competing technologies. Indeed, during the Class Period, there were not only periods of unnatural and sustained price stability, but there were also inexplicable increases in the prices of CRTs, despite declining demand due to approaching obsolescence of CRTs caused by the emergence of a new, superior, substitutable technology

46. These periods of price stability and price increases for CRTs are fundamentally inconsistent with a competitive market for a product where demand is rapidly decreasing because of the introduction of new superior technologies.

**Structure of the CRT Product Industry**

47.    The CRT Product industry is characterized by a number of structural features that facilitate collusion, including market concentration, the consolidation of manufacturers, multiple interrelated business relationships, significant barriers to entry, and interchangeability of products.

48.    Defendant Samsung SDI has the largest market share of any CRT Products manufacturer at this point in time. In 2000, Defendant Samsung SDI had 18% of the global CRTs market.  In 2002, Samsung SDI had 21.8% of the global market for CRT monitors.  In 2004, Samsung SDI had a 30% share of the global CRTs market.

49.    Defendant LP Displays (formerly LG Philips Displays) has the second largest share of the CRT market.  In 2004, LG Philips Displays held 27% of the global market for CRT.

50.    Defendant MT Picture Display (formerly Matsushita Toshiba Display Co.) is also a major player in the CRTs market.  In 2004, Matsushita Toshiba Picture Display Co. held 9% of the global market for CRTs.

51.    Defendant Chunghwa Picture Tubes held 21.7% of the global CRT market in 1999.

52.    In 2004, Defendants Samsung SDI, LP Displays, MT Picture Display, and Chunghwa Picture Tubes maintained a collective 78% of the global CRT market.  The market for

11

CRT Products is subject to high manufacturing and technological barriers to entry. Efficient fabrication plants are large and costly and require years of research, development and construction. Technological advances have caused Defendants to undertake significant research and development expenses.

53.    The CRT Products market has also been subject to substantial consolidation and multiple interrelated business relationships during the Class Period. Matsushita Electric Industrial Co. Ltd. and Toshiba Corporation combined their efforts by forming Defendant MT Picture Display Company. At the time of the formation of MT Picture Display, Matsushita and Toshiba had been the fourth and sixth largest CRT manufacturers in the world. This joint venture combined the entire CRT operations of both parent companies. MT Picture Display Company specialized in the manufacture of CRTs above 30 inches, supplying some 950,000 units annually to the North American market.

54.    In November 2000, Defendants LGE and Koninklijke Philips Electronics agreed to enter a 50/50 joint venture that merged their CRT operations. The resulting joint venture, originally named LG Philips Displays, and renamed LP Displays in 2007, entered the market with a 25% share, making it the second largest CRT manufacturer only behind Samsung SDI at the time.

55.    In 2005, Samsung SDI and LG Philips Displays entered into an agreement to share parts with respect to CRTs in an effort to boost their combined market share.

56.    Defendants sell their CRT Products through various channels, including to manufacturers of electronic products and devices, and to resellers of CRT Products, and incorporate CRTs into their own manufactured products, which are then sold directly to consumers.

**International Antitrust Investigations**

57.    Competition authorities in the United States, Europe, Japan and South Korea recently engaged in coordinated actions, including raids, targeting the unlawful CRT Products cartel alleged in this Complaint. On November 9, 2007, the Reuters news agency reported:

Antitrust authorities in Europe and Asia raided a Matsushita Electric Industrial Co. Ltd. unit and other cathode ray tube markers on suspicion of price fixing, weighing on the shares of the Panasonic maker.

Matsushita confirmed Japan's Fair Trade Commission (FTC) had begun a probe of its cathode ray tube unit. MT Picture Display Co. Ltd., while Samsung SDI Co. Ltd. said South Korea's FTC had started an investigation into its CRT business.

(www.reuters.com/articlefmergersNews1idU5L089085072007 1109).

58.    On November 9, 2007, the European Commission confirmed in Brussels that "on November 8 Commission officials carried out unannounced inspections at the premises of manufacturers of cathode ray tubes." The European Commission's announcement continued stating: "The Commission has reason to believe that the companies concerned may have violated EC Treaty rules on cartels and restrictive business practices."

59.    On November 12, 2007, Chunghwa Picture Tubes, Ltd. confirmed that it had received a subpoena from a California district court relating to CRTs. A federal grand jury operating under the auspices of the United States Department of Justice, Antitrust Division ("DOJ") through its San Francisco office issued the subpoena.

60.    On November 21, 2007, Koninklijke Philips Electronics, NV reported that it and its joint venture with LG Electronics, LP Displays, are also targets of the coordinated investigation into collusive practices and other antitrust violations in the CRTs market.

61.    The Defendants include known recidivist antitrust violators. Samsung, for example, was fined $300 million by the DOJ in October 2005 for participating in a conspiracy to fix prices for Dynamic Random Access Memory. It is also under investigation by the DOJ (along with some of the other Defendants, including Toshiba) for fixing prices of Static Random Access Memory. Samsung and Toshiba are also being investigated for collusion among manufacturers of NAND flash memory.

62.    Several Defendants, including Samsung and a joint venture between LG Electronics and Koninklijke Philips Electronics, are targets of a coordinated investigation by the DOJ and antitrust authorities in Europe, Japan and South Korea in connection with anticompetitive conduct in the market for LCD Products. Because LCD Products and CRT

13

1  Products are used in the same primary applications, collusion with respect to CRT Product prices

2  would bolster these same Defendants' LCD pricing cartel. Keeping CRT prices artificially

3  inflated would both increase profits on remaining CRT sales while protecting LCD prices.

4                            **CLASS ACTION ALLEGATIONS**

5        63.    Plaintiff brings this action on behalf of itself and all others similarly situated (the

6  "Class") pursuant to Federal Rules of Civil Procedure 23(a) and23(b)(3). The Class is defined as

7  follows:

8        All persons and entities residing in the United States who, from January 1,
         1995 through the present, purchased CRT Products in the United States
9        indirectly from the Defendants. Specifically excluded from this Class are
         the Defendants; the officers, directors or employees of any Defendant; any
10       entity in which any Defendant has a controlling interest; and any affiliate,
         legal representative, heir or assign of any Defendant. Also excluded are all
11       governmental entities, and any judicial officer presiding over this action.

12       64.    Plaintiff does not know the exact size of the Class, since such information is in the

13  exclusive control of the Defendants. Due to the nature of the trade and commerce involved,

14  however, Plaintiff believes that the Class includes thousands of CRT Products purchasers and is

15  so numerous and geographically dispersed throughout the United States as to render joiner of all

16  Class members impracticable.

17       65.    There are questions of law and fact common to the Class. These common

18  questions relate to the existence of the conspiracy alleged, and to the type and common pattern of

19  injury sustained as a result thereof.  The questions include but are not limited to:

20             a.    Whether Defendants and their co-conspirators engaged in a combination

21  and conspiracy among themselves to fix, raise, maintain or stabilize prices of CRT Products sold

22  in the United States;

23             b.    The identity of the participants in the conspiracy;

24             c.    The duration of the conspiracy alleged in this Complaint and the nature and

25  character of the acts performed by Defendants and their co-conspirators in furtherance of the

26  conspiracy;

27             d.    Whether Defendants undertook actions to conceal the unlawful conspiracy,

28  contract or combination described herein;

---

CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED

e.      Whether the conduct of Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business and property of Plaintiff and other members of the Class;

f.      The effect of Defendants' conspiracy on the prices of CRT Products sold in the United States during the Class Period; and

g.      The appropriate measure of damages sustained by Plaintiff and other members of the Class.

66.     Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of other Class members, and Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff is an indirect purchaser of CRT Products from one or more of the Defendants. Plaintiff's interests are aligned with, and not antagonistic to, those of the other members of the Class.  In addition, Plaintiff is represented by competent counsel experienced in the prosecution of antitrust and class action litigation.

67.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

68.     Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

69.     The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legaland factual issues relating to liability and damages.

70.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The Class is readily definable and is one for which records exist in the files of Defendants and their co-conspirators. Prosecution as a class action will eliminate the possibility of repetitious litigation. Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently and without duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of relatively small claims by many

CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED

1  class members who otherwise could not afford to litigate an antitrust claim such as is asserted in
2  this Complaint. This class action presents no difficulties of management that would preclude its
3  maintenance as a class action.

4                        **TRADE AND COMMERCE**

5        71.    During the relevant time period, Defendants collectively controlled asignificant
6  share of the market for CRT Products, both globally and in the United States.

7        72.    Each of the Defendants and their co-conspirators used instrumentalities of
8  interstate and/or foreign commerce to sell and market CRT Products.

9        73.    The business activities of the Defendants substantially affected interstate trade and
10 commerce.

11                      **FRAUDULENT CONCEALMENT**

12       74.    Throughout and beyond the conspiracy, Defendants and their co-conspirators
13 affirmatively and actively concealed their unlawful conduct from Plaintiff. Defendants and their
14 co-conspirators conducted their conspiracy in secret and kept it mostly within the confines of
15 their higher-level executives. Defendants and their co-conspirators publicly provided pre-textual
16 and false justifications regarding their price increases. Defendants and their co-conspirators
17 conducted their conspiracy in secret, concealed the true nature of their unlawful conduct and acts
18 in furtherance thereof, and actively concealed their activities through various other means and
19 methods to avoid detection. Plaintiff did not discover, and could not have discovered through the
20 exercise of reasonable diligence, that Defendants and their co-conspirators were violating the
21 antitrust laws as alleged herein until November 9, 2007, when it was first publicly reported that
22 manufacturers of CRT Products were being investigated by antitrust authorities in Europe, Japan
23 and South Korea for conspiring to fix the prices of CRT Products before this class action
24 litigation was commenced.

25       75.    As a result of the active concealment of the conspiracy by Defendants and their
26 co-conspirators entered into a continuing contract, combination or conspiracy to unreasonably
27 restrain trade and commerce in violation of Section I of the Sherman Act, 15 U.S.C. § 1,
28 defendants were artificially reducing or eliminating competition in the United States.

CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED

76.     In particular, Defendants have combined and conspired to raise, fix, maintain or stabilize the prices of CRT Products sold in the United States.

77.     As a result of Defendants' unlawful conduct, CRT Products prices were raised, fixed, maintained and stabilized in the United States.

78.     The contract, combination or conspiracy among Defendants consisted of a continuing agreement, understanding and concerted action among Defendants and their co-conspirators.

79.     For purposes of formulating and effectuating their contract, combination or conspiracy, defendants and their co-conspirators did those things they contracted, combined or conspired to do, including:

    a.      Participating in meetings and conversations to discuss the prices of CRT Products;

    b.      Agreeing to manipulate prices and supply of CRT Products in a manner that deprived direct purchasers of free and open competition;

    c.      Issuing price announcements and price quotations in accordance with the agreements reached;

    d.      Selling CRT Products to customers in the United States at non-competitive prices.

80.     As a result of Defendants' unlawful conduct, Plaintiff and the other members of the Class have been injured in their business and property in that they have paid more for CRT Products than they otherwise would have paid in the absence of Defendants' unlawful conduct.

## FIRST CAUSE OF ACTION
### (Violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1)

81.     Plaintiff, on behalf of herself and all others similarly situated, realleges and incorporates, as if fully alleged herein, each of the allegations contained in the preceding paragraphs of this Complaint, and further alleges against Defendants as follows.

82.     Beginning at least as early as January 1, 1995 and continuing through the present, the exact dates being unknown to Plaintiff, Defendants and various co-conspirators entered into

17

CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED

SC        Document 1        Filed 02/25/2008        Page 18 of 24

and engaged in a continuing agreement, contract, combination, and conspiracy to fix, raise, maintain, or stabilize the price for CRT Products in unreasonable restraint of trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

83. Defendants, through their officers, directors and employees, entered into the contract, combination, trust and conspiracy among themselves and their co-conspirators by, among other things:

      a.    Participating in communications, including discussions of the prices of CRT Products in the United States;

      b.    Agreeing, during those communications, to charge prices at specified levels and otherwise to increase, stabilize and maintain prices of CRT Products sold in the United States; and

      c.    Selling CRT Products to various customers in the United States at artificially inflated prices.

84. For the purpose of forming and implementing the alleged combinations, agreements, understandings and concert of action, Defendants and their co-conspirators did those things they conspired to do, including but not limited to the acts alleged above, including actions to fix, raise, maintain and stabilize the price of CRT Products.

85. Defendants have participated in one or more overt acts in furtherance of the conspiracy alleged above, and have participated in the conspiratorial activities described above.

86. The combination and conspiracy alleged herein has had the following effects, among others:

      a.    Price competition in the sale of CRT Products has been restrained, suppressed and/or eliminated throughout the United States;

      b.    Prices for CRT Products sold by Defendants and their co-conspirators have been fixed, raised, maintained and stabilized at artificially high, noncompetitive levels throughout the United States; and

      c.    Plaintiff and members of the Class have been deprived of the benefits of free and open competition.

CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED

87.     As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff and the members of the Class have been injured in their business and property in that they paid more for CRT Products than they otherwise would have paid in the absence of Defendants' unlawful conduct.

## SECOND CAUSE OF ACTION
### (Violation of the California Cartwright Act)

88.     Plaintiff, on behalf of herself and all others similarly situated, realleges and incorporates, as if fully alleged herein, each of the allegations contained in the preceding paragraphs of this Complaint, and further alleges against Defendants as follows.

89.     Beginning at a time presently unknown to Plaintiff, but at least as early as January 1, 1995 and continuing until the present, the exact date being unknown to Plaintiff, Defendants engaged in a continuing agreement, understanding and conspiracy in restraint of trade to artificially fix, raise, maintain and stabilize the price of CRT in violation of § 16720 *et seq.* of the California Business and Professions Code.  Defendants, and each of them, have acted in violation of Section 16720 to fix, raise, maintain and stabilize the prices of, and allocate markets for, CRT at supra-competitive levels.

90.     Each of the Defendants named herein, directly or indirectly and through affiliates, dominated, controlled, manufactured, sold and/or distributed CRT throughout the United States, including California.

91.     During the Class Period, Defendants have engaged in illegal, anticompetitive practices including those described herein and/or combinations of capital, skill, and acts with others with the intent, purpose and effect of creating and carrying out restrictions in trade and commerce; increasing the price and limiting and reducing the supply of CRT; and restraining trade and preventing competition in the relevant markets of CRT products , thereby enabling Defendants to perpetuate their monopoly.

92.     For the purpose of forming and effectuating the unlawful trust, Defendants and their Co-Conspirators have done those things which they combined and conspired to do, including but in no way limited to the acts, practices and course of conduct set forth above and the following:

19

CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED

1        a.   to fix, raise, maintain and stabilize the price of CRT;

2        b.   to allocate markets for CRT amongst themselves; and

3        c.   to allocate amongst themselves the production of CRT.

4        93.    The combination and conspiracy alleged herein has had, inter alia, the following

5   effects:

6        a.   price competition in the sale of CRT has been restrained, suppressed, and/or
             eliminated in the State of California and throughout the United States;

7        b.   prices for CRT sold by Defendants and their Co-Conspirators have been fixed,
8            raised, maintained and stabilized at artificially high, non-competitive levels in
             the State of California and throughout the United States;

9        c.   those who indirectly purchased CRT have been deprived of the benefit of free
10           and open competition.

11       94.    Plaintiff and the Class members paid supra-competitive and artificially inflated

12  prices for CRT and products containing CRT.

13       95.    As a direct and proximate result of Defendants' unlawful and anticompetitive

14  practices, Plaintiff and the Class members have been injured in their business and property in

15  that they paid more for CRT than they otherwise would have paid in the absence of Defendants'

16  unlawful conduct.  As a result of Defendants' and their co-conspirators' violation of Section

17  16720 of the California Business and Professions Code, Plaintiff seeks injunctive relief, treble

18  damages and costs of suit, including reasonable attorneys' fees, pursuant to Section 16750(a) of

19  the California Business and Professions Code.

20                          **THIRD CAUSE OF ACTION**
                              **(Unfair Competition)**

21       96.    Plaintiff, on behalf of herself and all others similarly situated, realleges and

22  incorporates, as if fully alleged herein, each of the allegations contained in the preceding

23  paragraphs of this Complaint, and further alleges against Defendants as follows.

24       97.    Beginning at least as early as January 1, 1995 and continuing until at least the

25  present, the exact date being unknown to Plaintiff, Defendants and their Co-Conspirators

26  committed and continue to commit acts of unfair competition, as defined by the California

27  Business and Professions Code §§ 17200, et seq. by engaging in the acts and practices specified

28  above.

                                          20

98.    Defendants' conduct alleged herein is unfair within the meaning of Business and Professions Code §§ 17200, et seq., as it offends an established public policy against restraint of trade and preventing competition and because it is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. Defendants' conduct is unlawful within the meaning of those sections, as it violates the provisions of the California Cartwright Act, (Cal. Bus. & Prof. Code §§ 16720, et seq.), the Sherman Antitrust Act (15 U.S.C. §§ 1, et seq.) and the Clayton Act, codified under Title 15 of the United States Code. Finally, Defendants' conduct is fraudulent within the meaning of Business and Professions Code §§ 17200, et seq., as it is likely to mislead the general public.

99.    The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity in the future.

100.    As a direct and proximate result of Defendants' unlawful, unfair and fraudulent acts and practices, including combinations and contracts to restrain trade and monopolize the relevant markets, Defendants, and each of them, as described above, have caused and continue to cause Plaintiff and the Class members to pay supra-competitive and artificially inflated prices for CRT, and the Plaintiff and consumers throughout California, have suffered an ascertainable loss of money and/or property and have been deprived of the benefits of free and fair competition on the merits.

101.    As a direct and proximate result of Defendants' unfair, unlawful, and/or fraudulent acts and practices, including combinations and contracts to restrain trade and monopolize the relevant markets, Defendants received and continue to hold moneys that were wrongfully taken from and which belong to Plaintiff and the Class.

102.    Pursuant to California Business and Professions Code, §§ 17200, et seq., Plaintiff demands restitution and disgorgement of all profits from the Defendants of all monies illegally acquired by them as a result of the unfair, unlawful and fraudulent conduct alleged herein, and appropriate injunctive relief.

## FOURTH CAUSE OF ACTION
### (Unjust Enrichment and Disgorgement of Profits)

103.    Plaintiff, on behalf of herself and all others similarly situated, realleges and incorporates, as if fully alleged herein, each of the allegations contained in the preceding paragraphs of this Complaint, and further alleges against Defendants as follows.

104.    Defendants benefited from their unlawful acts through the overpayment for CRT and products containing CRT by Plaintiff and Class members. It would be inequitable and unconscionable for Defendants to be permitted to retain the benefits of these overpayments, which were conferred by Plaintiff and Class members and retained by Defendants.

105.    Plaintiff and the Class members are entitled to have returned to each of them the amount of such overpayments as damages or restitution.

## FIFTH CAUSE OF ACTION
### (Injunctive Relief)

106.    Plaintiff, on behalf of herself and all others similarly situated, realleges and incorporates, as if fully alleged herein, each of the allegations contained in the preceding paragraphs of this Complaint, and further alleges against Defendants as follows.

107.    Beginning by at least January 1, 1995 and continuing until the present, Defendants entered into a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain, and/or stabilize prices for CRT in California and the United States.

108.    Defendants' conduct in restraint of trade had the intent, and effect, of maintaining artificially high, and anticompetitive prices of CRT and/or products containing CRT.

109.    Defendants and Co-Conspirators did those things they colluded and conspired to do, including, but not limited to, the allegations set forth herein.

110.    Defendants' illegal combination and conspiracy as alleged herein had the effect of (i) restraining, suppressing and/or eliminating competition; (ii) artificially fixing, raising, maintaining, and/or stabilizing prices at high, supra-competitive levels; and (iii) depriving consumers of free and fair competition on the merits.

CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED

111.    It is in the best interest of the public to enjoin, pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, Defendants and their officers, agents, employees, or representatives from engaging in the unlawful contract, combination, and conspiracy in restraint of trade or commerce of CRT.

112.    Plaintiff and the Class have and will continue to be injured by Defendants' ongoing conduct in violation of the antitrust laws of the United States and in violation of the antitrust, deceptive and unfair trade practices, and consumer protection statutes of California, in the absence of injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays:

1.    That the Court certify this action to proceed as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and direct that reasonable notice be given to members of the Class;

2.    That the Court adjudge and decree that Defendants and each of them have engaged in an unlawful contract, combination, and conspiracy in restraint of trade or commerce in violation of the California Cartwright Act, the Sherman Antitrust Act, and the Clayton Act; and that the Court award Plaintiff and members of the Class: (i) treble damages in an amount to be proved at trial as a result of the wrongful conduct alleged, plus interest, costs, and reasonable attorney's fees pursuant to California Business and Professions Code § 16750, and Section 4 of the Clayton Act, 15 U.S.C. § 15; and (iii) all other damages available under the laws of California;

3.    That the Court adjudge and decree that the Defendants and each of them have been unjustly enriched and that the Court return to Plaintiff and the Class the amount of such overpayments as damages or restitution;

4.    That the Court adjudge and decree that the Defendants and each of them have engaged in unfair, unlawful and/or fraudulent business acts and/or practices in violation of California Business and Professions Code §§ 17200, et seq., and order restitution and disgorgement of all moneys wrongfully obtained;

CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED

1    5.    That Plaintiff and the Class recover damages, as provided by federal and

2   California antitrust laws, and that a joint and several judgment in favor of Plaintiff and the Class

3   be entered against the Defendants in an amount to be trebled in accordance with such laws;

4    6.    That the Court award Plaintiff a permanent injunction under Section 16 of the

5   Clayton Act, 15 U.S.C. § 26, and under California Business and Professions Code §§ 16750 and

6   17203, enjoining Defendants, and their officers, agents, employees, or representatives from

7   engaging in this unlawful contract, combination, and conspiracy in restraint of trade or

8   commerce; and

9    7.    That Plaintiff and members of the Class be awarded pre- and post-judgment

10   interest, and that interest be awarded at the highest legal rate from and after the date of service

11   of the initial complaint in this action;

12    8.    That Plaintiff and members of the Class recover their costs of this suit, including

13   reasonable attorneys' fees as provided by law; and

14    9.    That Plaintiff and members of the Class have such other, further, and different

15   relief as the case may require and the Court may deem just and proper under the circumstances.

### JURY TRIAL DEMAND

Plaintiff hereby demands a jury trial on all claims for which she is entitled to a jury trial,

as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Dated: February 22, 2008

McMANIS FAULKNER & MORGAN

JAMES McMANIS
MARWA ELZANKALY

Attorneys for Plaintiff,
Carmen Gonzalez

CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED